IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SHIRLEY I. CONNER,**

    **Plaintiff,**

    v.

                        **Civil Action 2:15-cv-2424**
                        **Judge James L. Graham**
                        **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Shirley I. Conner, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

        **I.    BACKGROUND**

Plaintiff filed her application for benefits in May 2012, alleging that she has been disabled since July 1, 2001 due to fibromyalgia, depression, and chronic pain. (R. at 141-47, 175, 181.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Christopher

Dillon ("ALJ") held a hearing on December 19, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R. at 34–44.) Brian L. Womer, a vocational expert, also appeared and testified at the hearing. (R. at 45-48.) On February 28, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10–24.) On April 23, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–5.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she has not worked since 2003. (R. at 35.) According to her testimony, Plaintiff feels that she has gotten worse every year. (R. at 36.) She lives in an apartment with her three sons who are self-sufficient. (*Id.*) During a typical day, Plaintiff indicated that she spends much of her day lying down with a heating pad and pillows watching television. (*Id.*) Plaintiff testified that she uses a cane to ambulate. (*Id.*)

When asked about her depression, Plaintiff responded

> I've been suffering from depression for many years, but it's just gotten worse because I'm always in pain. And like I said, I can't really do much of anything which makes my depression even worse. And the slightest little thing I have to deal with, I have panic attacks real bad, and I just can't even function at all. So it makes it just-- the depression is a lot of my problem, but it's not the cause of the problems. I don't feel -- I think the chronic pain and all that is caused me to be more depressed.

(R. at 37.) Plaintiff testified that she goes to therapy for her depression on a regular basis. (*Id.*) When asked about the "no shows" and cancellations in her medical records, Plaintiff responded that she has a lot of trouble with transportation or getting out of her car. (R. at 37-38.) Plaintiff further testified that sometimes she feels "just too bad to even get up." (R. at 39.)

Plaintiff reported that she used to drive once or twice a month, but had not driven for the three or four months prior to the hearing. (R. at 38.) Her oldest son had taken over grocery shopping. (R. at 39.)

When examined by her counsel, Plaintiff testified that she has panic attacks 3 to 5 times per week and that she has crying spells every night. (R. at 40.) Plaintiff represented that she has difficulty sleeping and she goes for two or three days without sleep due to pain. (R. at 41.) She has suicidal thoughts when she feels that she will not be able to tolerate her continuing pain. (*Id.*) Plaintiff testified that when her pain flares, she goes to the hospital emergency rooms and receives several injections before she is able to sleep. (R. at 42.) Plaintiff rated her pain severity at a level of 6-7 on a 0-10 visual analog scale. (*Id.*)

Plaintiff testified that she gets severe pain even walking from room to room in her home. She is no longer lifts or carries "anything," including a gallon of milk due to the pain it causes; her "son's been doing all that." (R. at 44.)

### B.     Vocational Expert Testimony

Brian L. Womer testified as the vocational expert ("VE") at the administrative hearing. (R. at 45-48.) The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 45-48.) Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE concluded that Plaintiff could perform 2,800 sedentary, unskilled jobs in the regional economy, with 240,000 nationally, such as a polishing machine operator, sorting machine operator, and a wire insulator. (R. at 47.)

The VE further testified that there are no entry level, unskilled job at any exertional level that would allow an individual to miss work one day each week. (R. at 48.)

3

### III.    MEDICAL RECORDS[1]

    A.    St. Rita's Medical Center

In May 2011, Plaintiff was admitted to St. Rita's Medical Center due to depression and suicidal ideation. She reported that she has had multiple medical problems for a decade and has been given different diagnoses. "She is depressed and tearful, apparently has been fired from doctor after doctor and now feels there is nobody to take care of her." (R. at 314.) On mental status examination, Plaintiff's affect was variable, and her mood was depressed. Plaintiff endorsed suicidal ideation, but no plan. Plaintiff was diagnosed with rule out somatization disorder, probable major depressive disorder, and Cluster B traits. (R. at 314-17.) She was given Cymbalta and Remeron and admitted to the Golden Living Center during the month of June. (R. at 318-20.)

Plaintiff presented to the hospital again in May 2012, for depression and suicidal ideation thoughts focusing on her pain. (R. at 879-82.) The physician noted her previous hospitalization and remarked, "That picture is largely the same this time." (R. at 879.) On mental status examination, Plaintiff's affect was fairly flat, mood was discouraged and she was depressed. Plaintiff endorsed suicidal ideation, and believed she could act on these. Plaintiff was diagnosed with somatization disorder, major depressive disorder, and Cluster B traits. She was admitted to a locked psychiatric unit and placed on suicide precautions. Plaintiff was continued on her home medications. (R. at 881.)

    B.    Consolidated Care

---

[1] Plaintiff's statement of errors raises issues exclusively related to the ALJ's analysis of the mental health opinions in the record. Accordingly, the Court focuses only on the mental health records in this case.

Plaintiff sought mental health treatment at Consolidated Care on May 3, 2011. At that time, she was diagnosed with a mood disorder due to her general medical condition and fibromyalgia. She was assigned a Global Assessment of Functioning ("GAF") score of 52. She was referred to individual counseling and medical-somatic services. (R. at 535.)  Progress notes show that Plaintiff continued to treat at Consolidated Care until at least November 2013. (R. at 308-380, 899-914, 981-1005.)

In November 2011, counseling discussed coping skills for depression and anxiety while she is in jail. She had been indicted and sentenced to 90 days for prescription selling. (R. at 521.)

On April 7, 2012, Plaintiff was seen for a pharmacologic management appointment with a psychiatrist, Ritesh Kool, M.D.  He noted her history of major depression with psychotic features in partial remission, rule out opiate dependancy.  Her psychotic features were noted as visual hallucinations of shadows out of the corner of her eyes.  She finished incarceration for selling prescription painkillers. (R. at 540.)  Plaintiff indicated that her anxiety was "out of control," and specifically asked for Ativan.  Dr. Kool determined that Ativan was not an option given her legal history. (*Id.*)  On mental status examination, Plaintiff was alert and oriented x3; pleasant and cooperative; her appearance was within normal limits; thought process and content were found to be within normal limits; she had an anxious mood; affect was euthymic; memory, concentration and attention were all intact. (*Id.*)  Her medications were reviewed. (R. at 541.)

Plaintiff received crisis intervention service on May 22, 2012.  She was just released from the hospital for depression/anxiety, trouble eating, stressors included eviction, a court hearing,

5

unemployment, and lost of one half of her child support.  (R. at 516.)  Plaintiff was seen on June 2, 2012 for hospitalization follow-up and her medication was continued.  (R. at 538-39.)

In August 2012, a Community Support Specialist helped Plaintiff get housing arranged. (R. at 907-08.)

In December 2012, Plaintiff's counselor reported that Plaintiff had a good ability to care for her own needs including food preparation, household chores, personal hygiene, shopping, driving and transportation, banking and bill paying, and hobbies.  She indicated that Plaintiff's anxiety levels could prevent her from working a full eight hour shift and that she had significant difficulties with stress tolerance.  (R. at 916-17.)

On January 7, 2013, Tracy Detwiler, PA-C, a physician assistant specializing in psychology at Consolidated Care, completed a mental status questionnaire.  (R. at 919-21.)  Ms. Detwiler first saw Plaintiff on September 23, 2011.  She reported Plaintiff's mental status as oriented appearance, pleasant, and cooperative; her flow of conversation was clear, organized, logical, and goal oriented; and she had no thinking disorder.  Ms. Detwiler reported Plaintiff's mood as "up and down," but improved since her last visit.  She noted that Plaintiff complained of chest pain when she was anxious and of poor concentration and memory problems.  (R. at 919.) Ms. Detwiler noted Plaintiff's diagnosis as major depressive disorder with psychotic features. She opined that Plaintiff was easily distracted and that she had a decreased ability to remember directions that were over two-to-three steps.  She opined that Plaintiff had decreased ability to sustain concentration, persist at tasks, and timely complete tasks.  Ms. Detwiler opined that Plaintiff had decreased ability to adapt and would react poorly to routine tasks. Ms. Detwiler also noted that Plaintiff complained of problems maintaining attention and increased anxiety in social

situations. (R. at 920.) The form Ms. Detwiler completed indicates that "[t]he program requires that a psychologist or physician must have reviewed and signed the Mental Status Evaluation." Linda Griffith, M.D. a psychiatrist at Consolidated Care signed this questionnaire on January 8, 2013. (R. at 921.)

When seen in June 2013, Ms. Detwiler noted that because Plaintiff has missed several appointments with her therapist, she now has to do walk in clinic hours. She was having anxiety and depression noting she has to serve 9 days in jail for shop lifting. (R. at 998-99.)

      C.      State Agency Evaluation

On September 14, 2012, after review of Plaintiff's medical record, Caroline Lewin, Ph.D., a state agency psychologist, assessed Plaintiff's mental condition and opined that Plaintiff had moderate restrictions in her activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace; with one or two episodes of decompensation of an extended duration. (R. at 60.) She further determined that the evidence did not establish the presence of the "C" criteria. (*Id.*) Dr. Lewin found Plaintiff would have moderate limitations and her ability to get along with coworkers, maintain appropriate behaviors, and in her ability to respond appropriate supervision and interact with the general public. Plaintiff was also found to have moderate limitations in her ability to perform at a consistent pace and that she would be capable of sustaining a static set of tasks without fast pace. Plaintiff would have moderate limitations in her ability to adapt to changes in a work setting and that she may have increased pain when subjected to stressors. (R. at 63-64.) Dr. Lewin found Plaintiff may not be fully credible, noting that she may exaggerate or not give best effort at times. She may not fully cooperate with medical sources. Dr. Lewin also noted that Plaintiff claims a lot of pain; but she

has served jail time for selling narcotics, the medical evidence suggests she sold her own prescriptions. (R. at 64.)

On January 28, 2013, state agency psychologist, Todd Finnerty, Psy.D. reviewed the file on reconsideration and affirmed Dr. Lewin's assessment. (R. at 69-79, 82-84.) In assessing her credibility, he found Plaintiff to be not credible and noted that she had been uncooperative during the examination. He noted that Plaintiff was later observed walking and bending over outside of the office normally. (R. at 79.) In weighing the opinion evidence, Dr. Finnerty noted as the source of evidence, "Consolidated Care," and indicated that Dr. Griffith's opinion was entitled to controlling weight as it is reflective of the totality of the evidence. (R. at 79.)

## IV. ADMINISTRATIVE DECISION

On February 28, 2014, the ALJ issued his decision. (R. at 13–24.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

gainful activity since May 9, 2012, the application date. (R. at 15.) The ALJ found that Plaintiff had the following impairments that are severe in combination: a low back disorder, diabetes mellitus, fibromyalgia, hypertension, a chronic pain disorder, obesity, an affective disorder, and a substance use disorder in remission. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [Plaintiff] retains the functional capacity for work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; pushing or pulling similar amounts; standing and/or walking for a total of no more than 2 hours per work day; sitting for a total of 6 hours; the option to use an ambulatory device, such as a cane, for all standing and walking; no climbing of ropes/ladders/scaffolding; no more than occasional climbing of stairs and ramps; no more than occasional ability to perform all other postural activity; no foot pedal operation; no more than frequent handling and fingering; no more than occasional interaction with supervisors, coworkers, and the public; no more than simple, routine, repetitive tasks with a pace and stress tolerance that allows for no production quotas.

(R. at 18.) The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible. The ALJ determined that there is very little objective medical evidence to support the degree of limitation alleged by Plaintiff. (R. at 19.) As to Plaintiff's mental health impairments, the ALJ gave "minimal" weight to Tracy Detwiler, PA-C's opinion, specifically her opinion that Plaintiff would react poorly to routine tasks, because that opinion is not from an acceptable medical source and was based on Plaintiff's subjective complaints. (R. at 20.) However, the ALJ considered Ms. Detwiler's opinions as that on an "other source" pursuant to SSR 06-3p, and found the opinion consistent with other evidence in the record. The ALJ noted that her opinions were consistent with Plaintiff's

"counselor at Consolidated Care regarding the claimant's pace and productivity and her limitations in stress tolerance." (*Id.*) The ALJ gave "significant" weight to the assessments of the state agency psychologists, Caroline Lewin, Ph.D. and Todd Finnerty, Psy.D. (*Id.*)

The ALJ next found that the evidence related to any past relevant work is insufficient to make an appropriate and well-informed finding at step 4. Additionally, the ALJ determined that the finding at step 4 is not material because all applicable grid rules (Medical-Vocational Guidelines) would direct a finding of not disabled. (R. at 22.) Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 22-23.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 24.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

In her Statement of Errors, Plaintiff raises one issue. Plaintiff contends that the ALJ improperly evaluated the mental health opinion evidence of record. Within this contention of error, Plaintiff maintains that the ALJ improperly rejected Ms. Detwiler's opinion because she was not an acceptable medical source and mistakenly concluded that her opinions were based on Plaintiff's subjective complaints. (ECF No. 13 at Pgs. 7-9). Next, Plaintiff argues that the ALJ failed to recognize that Ms. Detwiler's opinion was reviewed and signed by Dr. Griffith, Plaintiff's treating psychiatrist. (*Id.* at Pgs. 9-12). Finally, according to Plaintiff, because the ALJ gave significant weight to the opinion of Dr. Finnerty, the state agency reviewing psychologist at the reconsideration level, and because Dr. Finnerty opined that Dr. Griffith's opinion was entitled to controlling weight, the ALJ's finding resulted in an inconsistency. (*Id.* at

11

Pgs. 12-13). Because it drives the remainder of the analysis, the Undersigned begins with the issue of whether Dr. Griffith was Plaintiff's treating physician.

### A. Treating Physician

Plaintiff insists that the ALJ erred by not acknowledging that Dr. Griffith, the managing physician-psychiatrist at Consolidated Care, reviewed, verified and signed Plaintiff's mental status questionnaire. She maintains that Dr. Griffith is her treating physician whose opinions should be regarded as the most influential and carry the greatest weight. The Undersigned disagrees.

As defined by the regulations, a treating source means "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902. "Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen the source with such a frequency consistent with accepted medical practice for that type of treatment and/or evaluation required for your medical condition." 20 C.F.R. § 416.902. The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory

12

diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).

Plaintiff contends that the ALJ erred by completely ignoring Dr. Griffith's opinion. Although Plaintiff characterizes Dr. Griffith as a "treating physician," the Undersigned finds this characterization unpersuasive for purposes of determining the appropriate weight to assign to her opinion– assuming signing off on an evaluation can be considered an opinion. Regardless, even if he had considered Dr. Griffith's opinion, the Undersigned concludes that the ALJ's failure to give her opinion controlling weight is not reversible error.

As set forth above, to qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. A court must determine whether or not an ongoing treatment relationship exists at the time the physician's opinion is rendered. *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is . . . whether [claimant] had the ongoing relationship with [the physician] *at the time he rendered his opinion*."); *see also Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimaint's] condition."). This is because "the rationale of the treating physician doctrine simply does not apply" where a physician issues an opinion after a single examination. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Here, Plaintiff complains that the Commissioner overlooks the nature of the treatment provided by Consolidated Care when she asserts that Dr. Griffith is not Plaintiff's treating physician. (Pl's Reply, at p. 2.) She notes that Consolidated Care provides a variety of mental health specialists instead of a single doctor or therapist. She insists that Dr. Griffith was her treating physician because she "had access to treatment notes from the great number of therapists and licensed physicians and psychologists who personally examined and observed" Plaintiff. (*Id.*)

The Undersigned cannot conclude that Dr. Griffith, as the managing psychiatrist who reviewed and approved a physician's assistant's evaluation, is a treating source for purposes of the Social Security regulations. The Undersigned is not casting any aspersions on the very important services that integrated mental health clinics provide. Indeed, "many unemployed disability applicants receive treatment at clinics that render care to low income patients by

14

providing mental health treatment . . . ." *Cole v. Astrue*, 661 F.3d 931, 939 n.4 (6th Cir. 2011). Plaintiff declares only that Dr. Griffith had access to records of physician and counselor who personally observed Plaintiff. She points to no treatment records signed by Dr. Griffith. She does not claim that Dr. Griffith ever personally examined her. Plaintiff indicates that the treatment notes from Consolidated Care state that she would "eventually get an appointment with a staff psychiatrist." (Pl's Reply at p. 2.) Yet, the Undersigned's review of the record reveals only one appointment with a psychiatrist for pharmacologic management and that appointment was with Dr. Ritesh Kool, M.D. Plaintiff has failed to adduce any evidence to the contrary. Under these circumstances, Plaintiff has not demonstrated an "ongoing treatment relationship" with Dr. Griffith. 20 C.F.R. § 404.1502. The Undersigned concludes, therefore, that Dr. Griffith was not Plaintiff's treating physician and that her opinions, to the extent any were given in this case, are not entitled to controlling weight.

That the state agency reviewing psychologist, Dr. Finnerty, indicated that Dr. Griffith's opinion was entitled to controlling weight as a treating physician does not change the outcome. Dr. Finnerty referred to Consolidated Care as the source of evidence and provided Dr. Griffith's name as the source of the opinion. (R. at 79.) The Court must assess the quality and quantity of the treatment relationship between the physician and the claimant. See *Kornecky,* 167 F. App'x 496, 506 (noting that the relevant inquiry is whether claimant had ongoing relationship with physician); *see also Yamin,* 67 F. App'x at 885 (examining the quantity of examinations by the physician and concluding two examinations insufficient). Here, Dr. Griffith had no such qualitative treating relationship with Plaintiff.

Moreover, the failure of the ALJ to acknowledge that Dr. Griffith signed off on the opinion is not reversible error because it was, in fact, the opinion provided by Ms. Detwiler. As set forth below, the Undersigned finds that the ALJ reasonably assessed and weighed the opinion of Ms. Detwiler. Because Ms. Detwiler and Dr. Griffith's opinion is one and the same, the identical rationale applies.

**B.    Physician Assistant**

Plaintiff argues that the ALJ improperly rejected Ms. Detwiler's opinion, who is a Physician Assistant, and assigned it minimal weight "because she was not an acceptable medical source and because he claimed her opinions were based on [Plaintiff's] subjective complaints." (Pl. Stmt. of Errs., at p. 7.) A closer review of the decision reveals, however, that the ALJ discounted only one aspect of Ms. Detweiler's opinion and reasonably accounted for the remaining limitations that were supported by the evidence into the RFC. The ALJ wrote as follows with respect to Ms. Detwiler's opinion:

> . . . [I]n January 2013, a physician's assistant (PA) to the claimant's managing psychiatrist opined that the claimant would react poorly to routine tasks. . . . That opinion, from a non-acceptable source, is given minimal weight because the form on which the opinion was state appears to simply transcribe the [Plaintiff's] complaints (In response to some of the questions on the form the responses are prefaced with "patient states. . ."). However, the opinion has been considered as an "other source", per SSR 06-3p, and I find that it is consistent with other evidence in the record in some respects, including the concerns fo the claimant's counselor at Consolidated Care regarding the claimant's pace and productivity and her limitations in stress tolerance. Therefore, in addition to restricting the claimant to simple, routine, repetitive tasks, I have restricted her to jobs with the pace and stress tolerance that allows for no production quotas. The evidence shows that the claimant has some moderate limitations in her abilities to get along with other people in the workplace and has become somewhat socially isolated due to her affective disorder exacerbated by her chronic pain disorder. Accordingly, I have restricted the claimant to no more than occasional interaction with supervisors, coworkers, and the public.

(R. at 20.)

Although the ALJ noted that Ms. Detwiler was a non-acceptable medical source, he only found her opinion that Plaintiff would react poorly to routine tasks was entitled to minimal weight. As the foregoing makes clear, the ALJ considered Ms. Detwiler's opinion as an "other source" pursuant to SSR 06-3p and found that Ms. Detwiler's opinion was consistent with other evidence in the record in several respects. For instance, the ALJ considered that Ms. Detwiler's opinion was consistent with concerns from Plaintiff's counselor at Consolidated Care regarding Plaintiff's pace, productivity, and stress tolerance. As a result, the ALJ restricted Plaintiff to jobs with a pace and stress tolerance that allows for no production quotas. The ALJ also, consistent with Ms. Detwiler's opinion that Plaintiff was easily distracted and had decreased ability to remember directions involving more than two-to-three steps, limited Plaintiff to only simple, routine, and repetitive work. Thus, contrary to Plaintiff's assertions, to the extent that the ALJ determined that Ms. Detwiler's opinions were supported and not based on Plaintiff's subjective complaints, the ALJ accounted for various limitations as opined by Ms. Detwiler.

Plaintiff specifically contends that the ALJ did not account for Ms. Detwiler's opinions that Plaintiff had a decreased ability to sustain concentration, persistence, and pace; in her ability to adapt; and that she would react poorly to even routine tasks. (Pl's Stmt. of Errs., at p. 8-9.) As set forth above, however, the ALJ did limit Plaintiff to no more than simple, routine, repetitive tasks with a pace and stress tolerance that allowed for no production quotas. These limitations account for Plaintiff's difficulties with concentration, persistence, pace and adapting.

As to Ms. Detwiler's opinion that Plaintiff would react poorly to routine tasks, the ALJ found that the evidence failed to establish that Plaintiff was unable to carry out routine tasks. (R. at 20.) Substantial evidence supports this assessment. Plaintiff fails to point to any records or

treatment notes that contradict the ALJ's finding regarding routine tasks. Instead, Todd Finnerty, Psy.D., a state agency psychologist, who reviewed the record evidence at the reconsideration level, including the opinion from Ms. Detwiler, provided support for the limitations imposed by the ALJ. Dr. Finnerty opined that Plaintiff could sustain a static set of tasks without fast pace. (R. at 83.) *See* 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.") The Undersigned concludes that the ALJ reasonably weighed and assessed the opinion from Ms. Detwiler and reasonably included those limitations supported by the record into the RFC.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   August 15, 2016                                                       /s/ *Elizabeth A. Preston Deavers*
                                                                            ELIZABETH A. PRESTON DEAVERS
                                                                            UNITED STATES MAGISTRATE JUDGE